# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00440-CV

**Nancy Marie Peck, Appellant**

**v.**

**Wayne Cody Peck, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY
### NO. 12-0349-FC2, HONORABLE JOHN MCMASTER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Nancy Marie Peck appeals from a final divorce decree that ended her approximately twenty-five-year marriage to Wayne Cody Peck and divided their marital property.[1]  The decree awarded Nancy[2] five years of spousal maintenance, and she complains in the first of two issues that the trial court reversibly erred in failing to find that she had a physical disability that prevented her from meeting her minimum reasonable needs, a finding that would have enabled her potentially to obtain maintenance for a longer duration.  In her second issue, Nancy insists that the trial court reversibly erred in awarding Wayne 100% of a Morgan Stanley account.  We will affirm the decree.

---

[1]  There were no minor children of the marriage at the time of the proceeding.

[2]  Because the parties share a common surname, we will refer to them by their first names for clarity.

## STANDARD OF REVIEW

Nancy's appellate issues are reviewed under an overarching abuse-of-discretion standard.[3] A trial court abuses its discretion if it acts arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence.[4] Challenges to evidentiary support entail a two-pronged analysis, inquiring whether (1) the trial court had sufficient evidence upon which to exercise its discretion, which incorporates the familiar standards of legal and factual sufficiency review; and (2) the trial court erred in its application of that discretion.[5]

## SPOUSAL MAINTENANCE

Nancy's first issue implicates specific requirements of Texas's spousal-maintenance regime that warrant an initial introductory explanation. The availability and amount of spousal maintenance—"an award . . . of periodic payments from the future income of one spouse for the support of the other spouse"[6]—is governed by Chapter 8 of the Family Code. Chapter 8 restricts a trial court's discretion to award spousal maintenance solely to circumstances where (1) a spouse "will lack sufficient property, including the spouse's separate property, on dissolution of the

---

[3] *Giesler v. Giesler*, No. 03-08-00734-CV, 2010 WL 2330362, at *2 (Tex. App.—Austin June 10, 2010, no pet.) (mem. op.) (citing *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981) (division of property); *Hipolito v. Hipolito*, 200 S.W.3d 805, 806 (Tex. App.—Dallas 2006, pet. denied) (spousal maintenance)).

[4] *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

[5] *Giesler*, 2010 WL 2330362, at *2 (citing *Steele v. Steele*, No. 03-07-00011-CV, 2009 WL 2567911, at *3 (Tex. App.—Austin Aug. 19, 2009, no pet.) (mem. op.)); *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied).

[6] Tex. Fam. Code § 8.001(1).

marriage to provide for the spouse's minimum reasonable needs," and (2) the spouse meets one of

several alternative additional eligibility requirements that include, as relevant here:

> (2)     the spouse seeking maintenance:
>
>> (A)     is unable to earn sufficient income to provide for the spouse's minimum reasonable needs because of an incapacitating physical or mental disability; [or]
>>
>> (B)     has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs . . . .[7]

If the trial court determines that a spouse is eligible to receive maintenance, it

shall then "determine the nature, amount, duration, and manner of periodic payments by considering

all relevant factors," including the age, employment history, earning ability, and physical and

emotional condition of the spouse seeking maintenance.[8]  The court's discretion in determining

duration is limited, however, by Section 8.054.[9]  Subsection (a) of Section 8.054 imposes two sets

of generally applicable limitations:  (1) a maximum duration of maintenance that is tied to the length

---

[7]  *Id*. § 8.051.  With respect to Paragraph (B), there is a rebuttable presumption that maintenance is not warranted unless the spouse seeking maintenance has "exercised diligence" in either "earning sufficient income to provide for the spouse's minimum reasonable needs" or "developing the necessary skills to provide for the spouse's minimum reasonable needs during a period of separation and during the time the suit for dissolution of the marriage is pending."  *Id*. § 8.053(a).

[8]  *Id.* § 8.052 (listing eleven factors).

[9]  *See id.* § 8.054.

of the marriage, which as applicable here would be seven years;[10] and (2) a further requirement that the trial court "shall limit the duration of a maintenance order to the shortest reasonable period that allows the spouse seeking maintenance to earn sufficient income to provide for the spouse's minimum reasonable needs."[11]

Neither general limitation on the duration of maintenance applies, however, if "the ability of the spouse to provide for the spouse's minimum reasonable needs is substantially or totally diminished because of: . . . physical or mental disability of the spouse seeking maintenance."[12]  In that event, the court has discretion to order maintenance "for as long as the spouse continues to satisfy [that] eligibility criteria,"[13] subject to periodic review and modification.[14]  This exception to Section 8.054's restrictions on the duration of maintenance is the focus of Nancy's first issue.

In this case, the issue of spousal maintenance was closely related to the disposition of the community interest in military retirement benefits Wayne had accrued and that he anticipated commencing to draw within a few months after trial.  The total retirement payment Wayne anticipated each month was approximately $3,600, and Wayne had agreed that Nancy was entitled to a one-half share of these payments, yielding her a monthly payment of approximately

---

[10]  *See id.* § 8.054(a)(1)(B) ("a court: . . . may not order maintenance that remains in effect for more than: . . . seven years after the date of the order, if the spouses were married to each other for at least 20 years but not more than 30 years").

[11]  *Id.* § 8.054(a)(2).

[12]  *Id.* § 8.054(a)(2)(A).

[13]  *Id.* § 8.054(b); *see also id.* § 8.054(a) (making eligibility under Subsection (b) exception from generally applicable limitation prescribed in Subsection (a)).

[14]  *See id.* § 8.054(c), (d).

4

$1,800 per month. However, Wayne acknowledged that he would likely apply for disability, which would cause a reduction in the total amount of monthly retirement benefits that was subject to division and, in turn, a smaller payment to Nancy. In light of that prospect, Wayne had agreed to pay spousal maintenance as a sort of gap-filler, proposing to pay Nancy monthly maintenance for five years in an amount that, when added to the share of his military retirement Nancy would receive, would yield a combined payment to her of around $2,000 per month. While agreeing with this basic framework, Nancy had insisted on obtaining maintenance in amounts sufficient to elevate her total monthly payments to $3,000. She further sought to establish that she was physically or mentally disabled so as to be exempt from Section 8.054's general limitations of the payments' duration.

After hearing evidence—which consisted solely of live testimony from both Nancy and Wayne and medical records[15]—the trial court made a maintenance award along the lines Wayne had advocated. It ordered monthly maintenance in the amounts necessary to comprise a combined monthly payment to Nancy of military retirement plus maintenance of $2,500 for the first 24 months following the decree, then a total of $2,000 in combined retirement plus maintenance for the next 36 months thereafter. At the end of that 60-month period (i.e., five years), Wayne's obligation to pay monthly maintenance was to cease and only the retirement-pay component would continue. In support of this maintenance award, the trial court made findings that included eligibility based on the length of the parties' marriage and a current inability of Nancy to provide for her minimum reasonable needs. Regarding duration, the court failed to find that Nancy's inability to

---

[15] The trial court excluded some of the records Nancy offered. Although Nancy's arguments on appeal appear to rely in part on excluded records, she has not challenged the evidentiary rulings.

5

meet her minimum reasonable needs was attributable to a physical or mental disability; in fact, it made affirmative findings that Nancy was not disabled. In the absence of a finding of disability, the court's material finding regarding the duration of maintenance was that the five-year period it had ordered represented "[t]he shortest reasonable period of time that allows [Nancy] to meet her reasonable minimum needs by obtaining appropriate employment or developing an appropriate skill."

The gravamen of Nancy's first issue is that the trial court's failure to find her physically or mentally disabled from working was contrary to evidence that conclusively or by the great weight and preponderance established that fact.[16] She emphasizes medical records reflecting

---

[16] Nancy bore the burden of proof on her spousal maintenance claim. *See, e.g.*, *Cooper v. Cooper*, 176 S.W.3d 62, 65 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Consequently, to prevail on her challenge to the legal sufficiency of the evidence underlying the trial court's failure to find disability, Nancy is required to demonstrate that the evidence established that fact conclusively as a matter of law. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) (citation omitted). As with other legal-sufficiency challenges, we view the evidence in the light most favorable to the trial court's finding (or failure-to-find), crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *See id*. at 809–11. To prevail on her challenge to the factual sufficiency of the evidence regarding disability, Nancy must demonstrate on appeal that the trial court's failure to find disability is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. A fact-finder's failure to find a fact is against the "great weight and preponderance" of the evidence when it is "clearly wrong and unjust." *Id.* Under either standard, we defer to the reasonable credibility determinations made by the fact finder (here, the trial court) and do not merely substitute our judgment. *See City of Keller*, 168 S.W.3d at 816–17, 819–20, 822 (legal sufficiency); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (factual sufficiency).

Nancy also asserts what amounts to a legal-sufficiency challenge to certain on-the-record comments made by the trial court. After announcing that "I do not find that Mrs. Peck is disabled," the trial court, referencing its experience from other cases, expressed concern that Nancy "is on a very distressing combination of medicine" that could be contributing to her claimed employment difficulties. Further, noting that Nancy had been obtaining prescriptions separately from several

6

that she had been diagnosed with a genetic condition known as Ehlers-Danlos syndrome (which is said to impact connective tissue and cause pain) and various other maladies (e.g., arthritis and back issues), and had sought treatment from numerous health-care providers for complained-of pain, depressive symptoms, anxiety, and purported memory impairment. However, Nancy ultimately did not succeed in introducing any evidence that any health-care provider had linked her diagnoses or complaints to an inability to work. In lieu of objective medical evidence, Nancy was relegated to relying on her own subjective claims that she is "constantly in pain," has "chronic fatigue" and "memory issues," and does not "expect" to be able to hold down a job because:

> It's difficult for me to sit longer than 20 minutes without starting to experience severe pain. . . . I can't stand or walk for an extended period of time. . . . But I have a limited amount of energy that I have to partition out through the day, as I explain the fatigue. The pain gets worse when I'm sitting in one place, when I'm typing on the computer, my hypermobile fingers and my hands. And I have difficulty focusing and remembering, keeping my mind on track. . . .

---

different providers, the court urged Nancy "to confer with one physician about her issues." On appeal, Nancy attacks these statements as supported by "***absolutely no evidence***" (emphasis in original) and seeks to characterize them as the sole or primary basis for the trial court's failure to find disability. As an initial observation, Nancy overlooks that such on-the-record comments are not relevant to our review of the sufficiency of the evidence. *See, e.g.*, *Lee v. Kaufman*, No. 03-10-00148-CV, 2011 Tex. App. LEXIS 6969, at *10–11 (Tex. App.—Austin Aug. 26, 2011, no pet.) (mem. op.) (noting that trial court's oral statements "cannot function as a substitute for findings of facts or conclusions of law"). On the other hand, some language similar to the trial court's statements did find its way into its written affirmative findings that no disability existed, where the court referenced Nancy "taking a combination of prescription medication (none of which indicate any inability to work) obtained from numerous physicians that needs to be better managed by her and by one physician." To the extent we should construe Nancy's arguments to assail this written finding instead, any error is ultimately immaterial or harmless. The material issue, again, is not whether the evidence is sufficient to support a finding affirmatively negating disability, as if Wayne had the burden on that issue, but whether the evidence is sufficient to support the trial court's failure to find that Nancy met her burden. As indicated above, the evidence abundantly supports that determination by the trial court.

7

While Nancy insists that the trial court had no discretion but to credit her claims of debilitation, it was manifestly the trial court's province to assess their credibility and weight.[17] In that regard, the trial court could have taken account of, e.g., an admission by Nancy that she had ridden on the back of a motorcycle on a round trip from a Williamson County location to Burnet less than six months before trial, and that despite her professed "memory issues," Nancy had testified at trial to details of financial transactions from several years earlier to support her claims to the Morgan Stanley account addressed in her second issue. To similar effect, the trial court also pointedly included a finding that Nancy had been rather inconsistent in purporting to rely on a wheelchair during the course of the proceedings. Further informing the inferences to be drawn was additional evidence that Nancy had possessed the wherewithal to earn a master's degree in health service management and to work as a registered nurse, yet had quit working in 2002 or 2003 with Wayne's consent (and which Wayne claimed had not been necessitated by any physical or mental problem) and had let her nursing license lapse, and had made no effort to find employment during a two-year period in which the divorce had been pending—a period in which it was undisputed that Wayne had been paying Nancy $2,000 per month in temporary spousal support.[18]

On this record, we cannot conclude that the evidence conclusively or by the great weight and preponderance established Nancy's professed disability. We overrule her first issue.[19]

---

[17] *See City of Keller*, 168 S.W.3d at 816–17, 819–20, 822 (legal sufficiency); *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761 (factual sufficiency).

[18] Further, it was undisputed that this delay had been calculated to ensure that Nancy would qualify for lifetime military-provided health care in advance of the divorce and Wayne's retirement.

[19] In addition to responding to Nancy's issues, Wayne urges that we go farther and vacate the entire maintenance award on the basis that Nancy failed to present evidence to prove her eligibility.

## MORGAN STANLEY ACCOUNT

Nancy's second issue complains of the trial court's award to Wayne of 100% of a Morgan Stanley account that was valued at approximately $46,610 at time of trial. The award rested on two alternative grounds. First, the court found that the entire balance of the account consisted of Wayne's separate property, namely an inheritance from his father in the original amount of $66,000. Second, in the event the account was properly classified as a community asset instead, the trial court found that it should regardless be awarded 100% to Wayne. Nancy challenges only the separate-property character but does not complain of the trial court's alternative rationale for the award. Nor would we find any abuse of discretion in awarding the asset as community property. Considered in the context of the decree as a whole, this award merely served to offset a portion of several disproportionate awards made in Nancy's favor, including a 60/40% split of proceeds from the sale of the marital home and Wayne's assumption of $41,000 in community debts. We overrule Nancy's second issue.

---

Because these claims seek relief more favorable to Wayne than that afforded by the decree, Wayne was required to perfect his own appeal in order to raise them. *See* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment . . . must file a notice of appeal."). He did not do so, so we lack jurisdiction to consider his complaint and dismiss it. *See id.*; *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 491–92 (Tex. App.—Austin 2012, pet. denied) (holding that appellate court lacked jurisdiction to consider appellee's cross-point seeking to alter trial court's judgment where appellee did not file notice of appeal).

**CONCLUSION**

We affirm the decree.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   July 15, 2016